ARBROOK, INC. and John J. Nappi, Plaintiffs-Appellants,

v.

AMERICAN HOSPITAL SUPPLY CORPORATION, Defendant-Appellee,

Tackmer Corporation, Intervenor-Appellee.

No. 79–2652.

United States Court of Appeals, Fifth Circuit.

May 15, 1981.

Charles S. Cotropia, Dallas, Tex., Don K. Harness, Birmingham, Mich., for plaintiffs-appellants.

Storey, Armstrong, Steger & Martin, John K. DeLay, Jr., Dallas, Tex., Dawson, Tilton, Fallon & Lungmus, John B. Lungmus, Chicago, Ill., Owen, Wickersham & Erickson, Robert E. Wickersham, San Francisco, Cal., Whann, Whann & Cleverger, Welton B. Whann, San Diego, Cal., for American Hospital Supply Corp. and Tackmer Corp.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This is a patent infringement suit. We affirm the district court's conclusion that the patents sued on are invalid, but we reverse the award of attorney's fees to the defendants.

The subject of this suit is a device called a tacky mat stack. This is a type of doormat used at entrances to hospital surgical rooms and other rooms where the entrance must be clean. Because it is tacky (slightly sticky), the mat removes dirt and bacteria from the soles of shoes and the wheels of carts. These tacky mats are made and sold in stacks, not as single sheets. The layers of the stack stick together in ordinary use, but when the top mat becomes dirty it may be peeled off to expose a fresh tacky mat.

The defendants in this case are Tackmer Corp. and American Hospital Supply Co., the manufacturer and seller, respectively, of the tacky mat stacks alleged to infringe the plaintiffs' patents. Tackmer is conducting the defense of the case and has agreed to indemnify American Hospital Supply against any liability. The plaintiffs are John J. Nappi, the holder of the patents in suit, and Arbrook, Inc., Nappi's exclusive licensee. Arbrook and Tackmer compete to supply tacky mat stacks to the hospital industry. Their products are substantially identical, except that Arbrook's mat stacks are meant to fit into a permanent metal frame while Tackmer's are designed to be used directly on the floor without any frame. Nevertheless, Tackmer's customers often insert Tackmer mat stacks into Arbrook permanent frames.

The plaintiffs allege infringement of four patent claims from two patents. The first patent, No. 3,083,393 ("the 393 patent"), entitled "Shoe Sole Cleaner", was issued to Nappi on April 2, 1963, from an application filed on November 24, 1961. The second patent, No. 3,665,543 ("the 543 patent"), entitled "Tacky Mat Stack", is an improvement patent on the 393 patent. It was issued to Nappi on May 30, 1972, on an application filed on November 19, 1970. The plaintiffs sue on Claim 2 of the 393 patent and Claims 10, 11, and 12 of the 543 patent. The parties and the district court bring forth a shower of theories and countertheories as to why these claims are valid or invalid. Fortunately, it is not necessary to address all of these to conclude that the district court was correct in finding all four claims invalid.

A. *The 393 Patent.* The district court found, among other things, that Claim 2 of the 393 patent was anticipated by a shoe-cleaning device built and sold by John A. Carrier Co. and used by the Massachusetts Institute of Technology from 1957 to 1961.

The Carrier design, like those now used by Tackmer and Arbrook, involved an expanse of tacky material placed like a doormat at the entrance to the "clean" environment. Unlike later designs, it did not use mat stacks or single-sheet mats, but instead used a long, broad tape of tacky material extended in a housing between two rollers on either side of the entranceway. The rollers kept tension on the tape, and an electric motor advanced the tape to expose a fresh segment every time someone walked on the tape.

■ If the Carrier machine anticipates the invention sought to be patented in the 393 patent, it renders the patent invalid. In that case the patent is void under 35 U.S.C. § 102(a) (1976) because the invention was known or used by others in this country before its invention by Nappi, the patentee; alternatively, it is void under *id.* § 102(b) because the invention was in public use or on sale in this country more than one year before Nappi's application for the patent.[1]

Before we may judge whether the Carrier machine anticipates the 393 patent, we must ascertain what the scope of that patent is. Although the 393 patent contains only two claims, it is a broad patent, seemingly attempting to preempt the field of sticky doormats as shoe-sole-cleaning devices. The preferred form of the invention, described and illustrated in the patent, embodies the same basic design actually marketed by Arbrook: a replaceable tacky mat stack resting on a hard base and contained in a fixed frame. There are obvious differences between that design and the Carrier machine. The language of the claims in the 393 patent, however, is much more general and more inclusive. Claim 2, the claim under suit, reads:

> Apparatus for cleaning the soles of shoes while the shoes are being worn, comprising a housing supportable upon a walking surface, a substantially flat supporting surface therein, of sufficient expanse to permit both of the shoes of an adult person to be comfortably planted thereon, means for temporarily holding a sheet of pressure sensitive adhesive in place, face-up upon said support, to cover said support, a sheet of pressure sensitive adhesive in place upon said support, and an opening in said holding exposing substantially the expanse of the supported active surface of the adhesive to the tread of the user, said temporary holding means being operative evenly over substantially the entire surface of the sheet being held.

The patent makes it clear that this breadth of language is intentional, reciting that "[s]ince it is obvious that many modifications can be made, while preserving the spirit of the invention, I intend to have my invention interpreted as broadly as indicated by the scope of the claims . . . ."

[2, 3] In deciding whether a patented invention has been anticipated, the courts must look to the claims of the patent and not to a particular commercial embodiment of them, for "the claims measure the invention". *General Electric Co. v. Wabash Appliance Corp.*, 1938, 304 U.S. 364, 368–69, 58 S.Ct. 899, 901–902, 82 L.Ed. 1402, 1405–06; *Rosen v. Lawson-Hemphill, Inc.*, 1 Cir. 1976, 549 F.2d 205, 210. This is only fair: since the patentee's right to exclude others from the use of his invention depends on the scope of his claims, he must be prepared to defend those claims, as written, against charges of anticipation. It is often said, therefore, that prior art that would infringe a patent claim, had it come later than the patent, anticipates the patent when it precedes it. *E. g., American Fruit Growers, Inc. v. Brogdex Co.*, 1931, 283 U.S. 1, 14, 51 S.Ct. 328, 331, 75 L.Ed. 801, 808; *Imperial Stone Cutters, Inc. v. Schwartz*, 8 Cir. 1966,

---

1. All patents enjoy a statutory presumption of validity, 35 U.S.C. § 282 (1976). The presumption is seriously weakened, however, if the Patent Office has overlooked pertinent prior art. *John Zink Co. v. National Airoil Burner Co.*, 5 Cir. 1980, 613 F.2d 547; *Steelcase, Inc. v. Delwood Furniture Co.*, 5 Cir. 1978, 578 F.2d 74, cert. denied, 440 U.S. 960, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979); *Parker v. Motorola, Inc.*, 5 Cir. 1975, 524 F.2d 518; *Gaddis v. Calgon Corp.*, 5 Cir. 1975, 506 F.2d 880. It is conceded that the Patent Office did not consider the Carrier machine.

370 F.2d 425, 429; *Chemical Construction Corp. v. Jones & Laughlin Steel Corp.*, 3 Cir. 1962, 311 F.2d 367, 373. A patent claim is anticipated when all of its claimed elements (or their equivalents) are found in a single unit of prior art. *Steelcase, Inc. v. Delwood Furniture Co.*, 5 Cir. 1978, 578 F.2d 74, 78–79, *cert. denied*, 440 U.S. 960, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979); *American Seating Co. v. National Seating Co.*, 6 Cir. 1978, 586 F.2d 611, *cert. denied*, 441 U.S. 907, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979); *Paeco, Inc. v. Applied Moldings, Inc.*, 3 Cir. 1977, 562 F.2d 870, 875; *Shanklin Corp. v. Springfield Photo Mount Co.*, 1 Cir. 1975, 521 F.2d 609, 616, *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1978); *Greening Nursery Co. v. J & R Tool & Manufacturing Co.*, 8 Cir. 1967, 376 F.2d 738; *Edward M. Marshall*, C.C.P.A.1978, 578 F.2d 301; *General Electric Co. v. United States*, Ct.Cl. 1978, 572 F.2d 745, 768.

■ A comparison of the elements of Claim 2 with the features of the Carrier machine makes it plain that the Carrier machine anticipated Nappi's invention point by point. Here are the components of the claim:

– A housing supportable upon a walking surface. The Carrier machine features such a housing around its tacky tape;

– A substantially flat supporting surface, large enough to place both shoes on comfortably. The Carrier machine has such a surface;

– Means for temporarily holding a sheet of pressure sensitive adhesive in place. Carrier's rollers accomplish this by keeping tension on the tacky tape;

– A sheet of pressure sensitive adhesive. The tape fills the role in the Carrier device; and

– An opening in the housing exposing substantially all of the active surface of the adhesive. This feature too, Carrier shares.

Arbrook and Nappi contend that the Carrier machine is greatly inferior to a mat stack design as a shoe cleaner. This may well be true; indeed, if it were not so, the patent would be vulnerable to attack under 35 U.S.C. § 112 (1976), which requires that an application for a patent shall specify the best mode of carrying out the invention. Nevertheless, when a patent applicant writes his patent claims broadly enough to include a previously existing device, he must accept the consequences if the device is found to anticipate the claim.

B. *The 543 Patent: Claims 10 and 11.* Although the 393 patent teaches the use of a tacky mat stack to clean shoe soles, it says little about the composition or construction of the adhesive sheets comprising those stacks. The 543 patent, an improvement patent, addresses that problem directly. Claim 10 of that patent, translated into English, describes the use of a "flexible support film", made of a substance impermeable to adhesives, as the base or backing of the individual sheets. This allows the sheets to be stacked directly on one another without the need for intervening layers of waxy paper or a similar lining material to prevent permanent bonding. Claim 11 further specifies that this flexible support film should be a thin solid plastic sheet.[2]

**2.** These are the claims in full:

10. In a tacky mat stack suited for the passage of pedestrian traffic thereacross and the concurrent adhesive removal of dirt particles from said traffic by the tread surface on the uppermost sheet of said stack, the improvement in a plurality of superimposed tacky mat sheets of composite laminar construction wherein each superimposed sheet is comprised of a flexible support film having an integral adhesive-impermeable barrier surface extending across essentially the full underside thereof and a pressure-sensitive adhesive coating carried on the top side of said support film and forming an upwardly facing pressure-sensitive adhesive tread surface of the sheet, said coating being in secure non-delaminating engagement with said support film to provide said composite laminar structure, said barrier surface preventing penetration therethrough of the adhesive tread carried by an underlying sheet and consequent adhesive welding of superimposed sheets during the passage of pedestrian traffic across the stack, said barrier surface facilitating easy separation of each topmost sheet after passage of pedestrian traffic thereon while preventing inadvertent relative move-

■ There is considerable controversy over whether the 543 patent describes a "two-element sheet" (the flexible support film plus the adhesive substance applied on it) or a "three-element sheet" (the same elements plus a fibrous web of gauzelike material). We need not decide the point, however, for the plaintiffs lose either way. It is undisputed that the defendants have never made or sold a three-element tacky mat stack; hence, if the claims in suit are construed to cover only a three-element sheet, there can be no infringement here. If the claims cover a two-element sheet, on the other hand, they are invalid under § 102(b) because the inventions they describe were on sale in this country more than one year before application for the patent.[3] The plaintiffs concede that Nappi, the patentee, constructed a two-element sheet using a plastic support film as early as 1965 and offered it for sale to Arbrook in 1968, more than a year before Nappi filed the application that eventually became the 543 patent. An offer for sale, even if unaccepted, is sufficient to put the invention "on sale" for purposes of § 102(b). *E. g., Bergstrom v. Sears, Roebuck & Co.,* 8 Cir. 1979, 599 F.2d 62 (per curiam); *CTS Corp. v. Piher International Corp.,* 7 Cir. 1979, 593 F.2d 777, *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1980); *Kalvar Corp. v. Xidex Corp.,* 9 Cir. 1977, 556 F.2d 966 (per curiam); *Dunlop Co. v. Kelsey-Hayes Co.,* 6 Cir. 1973, 484 F.2d 407, *cert.*

*denied,* 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974); *Peter F. Theis,* C.C.P.A. 1979, 610 F.2d 786.[4]

■ C. *The 543 Patent: Claim 12.* The final claim in this suit is Claim 12 of the 543 patent, an improvement on the mat stack construction described in Claim 10. The innovation in Claim 12 is the addition along one edge of each sheet in the stack of a tab of non-adhesive material to prevent the sheet from sticking to the bottom of the next sheet above. This makes it easier to peel off the sheets individually.[5]

The district court correctly found that Claim 12 was anticipated. Claim 1 of the 393 patent describes the same improving feature in unmistakable terms. The claim is therefore invalid under § 102(b) because the invention was patented more than one year before Nappi's application.

■ D. *Attorney's Fees.* 35 U.S.C. § 285 (1976) provides that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The district court concluded that this is an exceptional case and awarded attorney's fees to the defendants. Award or denial of fees under § 285 is left to the discretion of the trial court, and its decision is reviewable only for abuse of discretion. *Graham v. Jeoffroy Mfg., Inc.,* 5 Cir. 1958, 253 F.2d 72, 78, *cert. denied,* 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958).

---

ment between the superimposed sheets of the stack.

11. The tacky mat stack of claim 10 wherein the flexible support film is a thin solid plastic sheet and the barrier surface of said film is disposed in overlying confronting relationship with the pressure-sensitive adhesive of an underlying sheet and is releasably held thereby to prevent relative movement therebetween while facilitating peelable separation thereof.

**3.** The purpose of applying this rule to prior sales by the patentee is to prevent him from compounding his period of protected patent monopoly with an additional, earlier period of monopoly through secrecy. *Tool Research & Engineering Corp. v. Honcor Corp.,* 9 Cir. 1966, 367 F.2d 449, 454, *cert. denied,* 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972 (1967); *Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.,* 2 Cir. 1946, 153 F.2d 516, 520, *cert.*

*denied,* 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615 (1946).

**4.** There is no contention that Nappi's offer of sale to Arbrook was for experimental purposes. *Cf. Sauquoit Fibers Co. v. Leesona Corp.,* 5 Cir. 1974, 498 F.2d 271, *cert. denied,* 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); *Hobbs v. United States,* 5 Cir. 1971, 451 F.2d 849.

**5.** Claim 12 reads:

12. The mat stack of claim 10 wherein one edge of the sheet is provided with gripping means in confronting relationship with the barrier surface of an overlying sheet to provide constant nonadhering contact therebetween at said one edge while facilitating initial separation of the overlying sheet from the stack.

We hold that the court abused its discretion here. That a patent plaintiff has lost on the merits is not enough to warrant a fee award under § 285; such awards are proper only when the plaintiff has acquired his patent by fraud or brings an infringement suit with no good faith belief that his patent is valid and infringed. *See, e. g., Bird Provision Co. v. Owens Country Sausage, Inc.,* 5 Cir. 1978, 568 F.2d 369, 378; *Parker v. Motorola, Inc.,* 5 Cir. 1975, 524 F.2d 518, 535, *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); *Keystone Plastics, Inc. v. C & P Plastics, Inc.,* 5 Cir. 1975, 506 F.2d 960, 967; *Williamson-Dickie Mfg. Co. v. Hortex, Inc.,* 5 Cir. 1974, 504 F.2d 983, 988–89; *Garrett Corp. v. American Safety Flight Systems, Inc.,* 5 Cir. 1974, 502 F.2d 9, 22–23. The purpose of § 285 is to prevent gross injustice, and an award under that statute requires an unambiguous showing of extraordinary misconduct. *Seismograph Service Corp. v. Offshore Raydist, Inc.,* 5 Cir. 1958, 263 F.2d 5, 28; *Airtex Corp. v. Shelly Radiant Ceiling Co.,* 7 Cir. 1976, 536 F.2d 145, 155; *Stillman v. Edmund Scientific Co.,* 4 Cir. 1975, 522 F.2d 798, 800; *Scott Paper Co. v. Fort Howard Paper Co.,* 7 Cir. 1970, 432 F.2d 1198, *cert. denied,* 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971). We find no such showing here. We have found all of the relevant patent claims invalid, but it is far from clear that their invalidity, apparent after a full trial, should have been obvious to all parties all along.[6] (Indeed, we may say that several of the defendants' theories purporting to prove invalidity strike us as dubious.) The district court cites no persuasive evidence to support its conclusory findings of bad faith prosecution. Nor is there any evidence that the plaintiffs sought to defraud the Patent Office by failing to disclose prior art. There is room for honest disagreement as to what prior art is pertinent. *Scott Paper,* 432 F.2d at 1204–05. A patent applicant who fails to disclose arguably relevant prior art runs the risk that his patent may later be invalidated

because of the omission, but he is not liable for fees under § 285 unless he is guilty of deliberate misrepresentation or concealment. *Id.; Indiana General Corp. v. Krystinel Corp.,* 2 Cir. 1970, 421 F.2d 1023, 1033–34, *cert. denied,* 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970). Finally, we reject the contention that the plaintiffs' alleged improper conduct during discovery supports a fee award. Assuming such improprieties took place, the proper remedy lies under Fed.R.Civ.P. 37 and not under § 285. *Airtex,* 536 F.2d at 155; *Stillman,* 522 F.2d at 800.

The judgment is REVERSED as to the award of attorney's fees but is otherwise AFFIRMED.

---

**6.** The patentee is this case has collected substantial royalties on his patents, and he obtained a favorable settlement on a prior infringement suit brought on the same claims. *See also* 35 U.S.C. § 282 (1976).