**AIRWICK INDUSTRIES, INC.**

v.

**STERLING DRUG INC., d/b/a Lehn & Fink Products Company**

v.

**James A. SMITH.**

**Civ. A. No. 80–187.**

United States District Court, D. New Jersey.

May 9, 1989.

On Petition for Attorney Fees July 14, 1989.

Hugh A. Chapin, Albert J. Breneisen, James Galbraith and Richard S. Gresalfi of Kenyon & Kenyon, New York City and Frederick S. Kessler of Clapp & Eisenberg, Newark, N.J., for plaintiff Airwick Industries.

John D. Foley, Christopher E. Chalsen and Peter DeLuca of Morgan & Finnegan, New York City and Ann G. McCormick of Crummy, DelDeo, Dolan, Griffinger and Vecchione, Newark, N.J., for defendant Sterling Drug Inc.

### ADJUDICATION

CLIFFORD SCOTT GREEN, District Judge.

After a non-jury trial[1] on Sterling's request for attorney fees, and on its First,

---

1. This action was transferred from the District of New Jersey to the Eastern District of Pennsyl-

Third, Fourth, and Fifth Counterclaims, I make [2] the following:

## FINDINGS OF FACT

### A. *Re: Background*

1. Plaintiff, Airwick Industries, Inc. ("Airwick") is a New Jersey corporation, with its principal place of business located in Carlstadt, New Jersey. At the commencement of this action, Airwick was a wholly-owned subsidiary of Ciba–Geigy Corporation. Airwick has since been acquired by Reckitt & Coleman, PLC.

2. Defendant, Sterling Drug, Inc., d/b/a Lehn & Fink Products Company ("Sterling"), is a corporation of the State of Delaware, and has a place of business in Montvale, New Jersey.

3. James A. Smith, an additional defendant on the counterclaim, was employed by Sterling Drug's Lehn & Fink Products Group from 1967 until September of 1975. He began with Lehn & Fink as a research chemist, and was later transferred to the marketing department. Mr. Smith began his employment at Airwick on May 10, 1976 as Director of Research and Development. He was employed in that capacity until March 3, 1978.

4. Airwick manufactures and sells products under the trademarks CARPET FRESH and GLAMORENE RUG FRESH.

5. Sterling manufactures and sells a product under the trademark LOVE MY CARPET.

6. The involved products are rug and room deodorizers—powdered carpet treating compositions which may be applied to a carpet by sprinkling or shaking, and later vacuumed up. The compositions contain a perfume which serves to deodorize the carpet, and which, when vacuumed from the rug using a conventional vacuum cleaner, imparts a fragrance into the air.

7. Airwick and Sterling are in direct competition in the State of New Jersey, and throughout the United States, in the manufacture and sale of the aforementioned rug and room deodorizers.

8. United States Patent No. 4,161,449 ("the '449 Patent") was issued on July 17, 1979 on patent application (serial no. 830,-238) filed in the United States Patent and Trademark Office on September 2, 1977 in the names of James A. Smith and James H. McLaughlin entitled "Powdered Carpet Composition." The '449 Patent application was prosecuted by Harry Falber, attorney for Ciba–Geigy.

9. At all relevant times, Airwick owned the '449 Patent.

10. This lawsuit was commenced on January 22, 1980 as a patent infringement action in which Airwick accused Sterling of infringing the '449 Patent.

11. Subsequent to the institution of this action, Airwick filed an application in the United States Patent and Trademark Office ("PTO") for a reissue of the '449 Patent. On July 29, 1980, the patent infringement action was stayed, by Order of the District Court, pending resolution of Airwick's reissue application.

12. Sterling participated in the reissue patent proceedings as a Protestor. It submitted several briefs in support of its position that the reissue patent application claims were unpatentable.

13. The Examiner made certain findings including, *inter alia*, that the St. Louis test was "experimental," and that certain claims were not patentable under 35 U.S.C. § 102(f).

14. Airwick appealed to the Patent Office Board of Appeals. The appeal was heard by the Board on January 27, 1982.

15. The PTO Board of Appeals made the following findings:

a) The appealed reissue claims were unpatentable under 35 U.S.C. § 102(f);

---

vania for trial purposes only. It was initially assigned to Judge Weiner, but was, thereafter, reassigned to my calendar.

**2.** Counsel have submitted Proposed Findings of Fact. Since many of the proposals include multiple facts, and not all of these facts are supported by the evidence, such proposed findings, as stated, are denied.

b) All claims were unpatentable under 35 U.S.C. § 102(g), and 35 U.S.C. § 103, because their subject matter was anticipated, or rendered obvious, by the prior McLaughlin/CNPD compositions;

c) The St. Louis testing activities constituted "public use" of the invention, and thus rendered the '449 Patent unpatentable under 35 U.S.C. § 102(b);

d) The composition claims of the reissue application were unpatentable under 35 U.S.C. § 103 because they were directed to subject matter which was obvious over the prior art U.S. Patents of *Dumbrell, Baskerville,* and *Storm* and other secondary references; and

e) Claims 11–13, 18, 23, and 25 were found to be unpatentable for failure to comply with the reissue statute, 35 U.S.C. § 251, because they contained subject matter intentionally concealed during the prosecution of the '449 Patent which could not be recaptured by reissue.

16. On March 22, 1982, Airwick petitioned the Board of Appeals to reconsider its decision. The Board granted the petition, but declined to change its decision.

17. Airwick appealed the decision of the PTO Board of Appeals to the Court of Appeals for the Federal Circuit ("the Federal Circuit"). The court held that the appealed reissue patent application claims were all unpatentable under 35 U.S.C. § 102(b), since the product was in "public use," via the St. Louis testing activities, more than one year prior to the patent application. The Federal Circuit did not address the other grounds of rejection made by the Board of Appeals. The Federal Circuit's opinion is set forth in *In re Smith and McLaughlin,* 714 F.2d 1127 (Fed.Cir.1983).

18. Airwick's request for a rehearing was denied by the Federal Circuit on August 30, 1983.

19. Airwick abandoned its reissue application, and disclaimed the '449 Patent on January 30, 1984. Accordingly, the issues raised by Airwick's Complaint are moot.

20. Sterling now seeks an award of attorney fees based upon (a) Airwick's alleged fraudulent and inequitable conduct before the PTO, and (b) Airwick's alleged bad faith institution, prosecution, and maintenance of this lawsuit.

21. In its First Counterclaim, Sterling asserts a claim for unjust enrichment for Mr. Smith's/Airwick's alleged misappropriation, and use, of trade secret information belonging to Sterling relating to carpet maintenance product technology and marketing.

22. The Second Counterclaim seeks a determination of validity and infringement of the '449. Both parties have treated this counterclaim as moot, presumably because the '449 Patent was disclaimed. *See* Airwick's Post–Trial Brief, p. 2; Sterling's Pre–Trial Brief, pp. 1–2.

23. In its Third Counterclaim, Sterling asserts a claim against Airwick for a false advertising violation under section 43(a) of the Lanham Trade–Mark Act.

24. In its Fourth Counterclaim, Sterling claims that Airwick wrongfully applied "patented" notices to its products in violation of 35 U.S.C. § 292.

25. In its Fifth Counterclaim, Sterling asserts a "Walker Process" claim against Airwick under the Anti–Trust Laws.

### B. *Re: Claim For Attorney Fees Based on Inequitable Conduct*

PUBLIC USE:

1. During the summer of 1976, Airwick conducted concept tests in Philadelphia and Houston.

2. In August 1976, Mr. Smith, on behalf of Airwick, conducted tests in St. Louis, wherein consumers were given the Airwick product to use in their homes. As found by the Federal Circuit, this test differed from the Houston and Philadelphia tests in that: 1) the inventors did not control the actual testing of the product; 2) no restrictions were placed on the consumers' use of the product; 3) the consumers were interviewed concerning the use of the product; 4) the unconsumed portions of the product were not returned; and 5) the subsequent customer interviews were conducted, pri-

marily, for the purpose of obtaining marketing and commercial information. *See In re Smith and McLaughlin*, 714 F.2d at 1135.

3. Mr. Smith was aware of the distinction between marketing and experimental use, and was also conscious of the "public use" statutory bar, which precludes the issue of a patent if "the invention was ... in public use ... more than one year prior to the date of the application for patent." 35 U.S.C. § 102(b).

4. Mr. Smith believed that the St. Louis test could possibly be characterized as an experimental use, which would have been an exception to the "public use" bar.

5. Mr. Smith also knew that the St. Louis test could also be characterized as a "public use" which would have barred an untimely application.

6. Mr. Smith intentionally withheld information regarding the St. Louis test from Mr. Falber, the attorney prosecuting the '449 Patent. The failure to disclose this information prevented the PTO from considering the St. Louis testing activities.

7. Had the information been disclosed to Mr. Falber, Mr. Falber would have possibly viewed the St. Louis testing activities as material, and disclosed it to the PTO.

8. Mr. Smith breached his duty of candor prescribed by 37 C.F.R. § 1.56(a) (The Rules of Practice in Patent Cases) ("Rule 1.56(a)").

9. By violating Rule 1.56(a), Mr. Smith avoided inquiry into the issue of the public use of the product in St. Louis.

10. The intentional conduct of Mr. Smith, in concealing information relative to the St. Louis test from his counsel, constitutes inequitable conduct, and "exceptional" misconduct within the meaning of 35 U.S.C. § 285. Consequently, Sterling is entitled to reasonable attorney fees.

OTHER ALLEGED FRAUDS:

11. Sterling also contends that it is entitled to attorney fees from Airwick because of Airwick's fraudulent behavior when: 1) naming the improper inventorship entity, in violation of 35 U.S.C. § 102(f); 2) failing to disclose a prior sale of the invention from

CNPD to Airwick; 3) asserting its insupportable claims of Airwick's commercial success; 4) attempting to recapture, in the reissue application, that which it had relinquished during the original prosecution; 5) incorrectly designating particle size limitations; and 6) failing to precisely define the role of agglomerating agents.

12. Upon consideration of all the evidence, Sterling has not presented clear and convincing proof to establish Airwick's intent to deceive during any of these activities: Airwick has presented credible explanations for its actions in each of these situations.

C. *Re: Claim For Attorney Fees Based On Vexatious Litigation*

1. Sterling's product, LOVE MY CARPET I, was being sold in May of 1980. Sterling intended, and did, in fact, replicate CARPET FRESH which was made in accordance with the claims of the '449 Patent.

2. Airwick obtained a legal opinion as to the validity and infringement of the '449 Patent prior to commencing this action. Counsel advised Airwick that the '449 Patent was valid, and infringed by Sterling.

3. Sterling has failed to establish, by a preponderance of evidence, that the institution and maintenance of the present litigation was in bad faith.

D. *Re: Walker Process Counterclaim*

1. Airwick did not act fraudulently in the original prosecution, or during the reissue application, of the '449 Patent.

2. The '449 Patent was not procured by fraud.

E. *Re: False Marking*

1. Before Airwick disclaimed '449 Patent, it was advised by counsel to delete all reference to the '449 Patent from all CARPET FRESH labels at the next printing.

2. After disclaiming the '449 Patent, Airwick continued to package containers of CARPET FRESH which made reference to the '449 Patent, or contained a "Patented Anti–Soil Formula" legend.

3. The product bearing the patent referencing labels appeared in television and print advertisements after January 30, 1984.

4. By mid-April of 1984, most of the labels had been changed. Airwick, however, continued to print labels, referencing the '449 Patent, for containers of its GLAMORENE product well beyond the next printing date.

5. Airwick could, and should, have moved more expeditiously to delete all reference to the '449 Patent/"Anti–Soil" labels.

6. The evidence discloses that Airwick sought to heighten its financial position by coordinating the phasing out of the falsely marked old product with the introduction of its new easy vacuuming product.

7. Sterling has not established, by a preponderance of the evidence, that Airwick acted with an intent to deceive the public.

### F. *Re: False Advertising Claim*

1. The evidence shows that in 1984, Arm & Hammer's new product was a major force in the market, and that both Sterling and Airwick's sales declined that year.

2. Sterling has not shown that Airwick's conduct, as described in Facts E(1)–E(6), was a substantial factor in bringing about the decline in sales of Sterling's product.

### G. *Re: Trade Secrets and Misappropriation*

1. As part of Mr. Smith's employment agreement with Sterling, Mr. Smith executed an "Agreement Relating to Confidential Information and Inventions."

2. On March 26, 1974, and September 19, 1975, Mr. Smith executed additional agreements with Sterling relating to trade secrets and confidential information.

3. Sterling has not established, by a preponderance of evidence, the existence of any trade secret which could have been the subject of misappropriation by Mr. Smith/Airwick.

4. To the extent that Sterling claims DISPAL to be a trade secret, the evidence shows that the use of DISPAL was well known and publicized in the industry prior to Mr. Smith's employment at Sterling.

5. Insofar as Sterling alleges a trade secret in the marketing/development of ideas and concepts, Sterling has failed to identify any such idea/concept that could have been misappropriated by Mr. Smith/Airwick.

## DISCUSSION

### I. *Attorney Fees*

Sterling argues that Airwick's inequitable conduct, and bad faith enforcement of the '499 Patent, warrant imposition of attorney fees under 35 U.S.C. § 285. Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

### A. Inequitable Conduct

Sterling contends that Airwick's non-disclosure and misrepresentation of material information constitute inequitable conduct. Specifically, Sterling asserts that it has established, by clear and convincing evidence, fraudulent behavior by Airwick resulting from the withholding of material information from the PTO on four issues: 1) the inventorship of the '449 Patent; 2) the sale of the product; 3) the public use of the product; and 4) the inadequate disclosure of prior art.

Sterling argues that Airwick committed fraud on the PTO when it failed to disclose the material information regarding the St. Louis testing activities. Airwick argues, however, that Sterling fails to establish the intent element by clear and convincing evidence.

According to the Federal Circuit,

[i]nequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence.

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988) (citing *J.P. Stevens & Co., Inc. v. Lex*

*Tex Ltd., Inc.,* 747 F.2d 1553, 1559–60 (Fed. Cir.1984)).

Materiality can be established by showing that "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Rule 1.56(a). *See J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1559 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). In order to establish the "intent" element, the proof must "indicate sufficient culpability" after a hard look at "all the evidence, including evidence indicative of good faith." *Kingsdown Medical Consultants v. Hollister Inc.,* 863 F.2d at 876. Once these elements have been shown, the court must then balance them to ascertain if the conduct was "inequitable."

> Questions of "materiality" and "culpability" are often interrelated and intertwined, so that a lesser showing of the materiality of the withheld information may suffice when an intentional scheme to defraud is established, whereas a greater showing of the materiality of the withheld information would necessarily create an inference that its nondisclosure was "wrongful."

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1363 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984) (citations omitted).

Here, there is no dispute that information regarding the St. Louis test was highly material since its eventual disclosure rendered the '449 Patent invalid. *See* Facts A(15)–A(17). Sterling asserts that Airwick's fraud, committed with the intent to deceive, resulted in inequitable conduct. Airwick contends that its conduct was not inequitable, much less fraudulent.

As the Federal Circuit determined, the St. Louis testing conducted by Airwick was, primarily, a marketing test. *See In re Smith, et al.,* 714 F.2d 1127 (Fed.Cir.1983). The court found that:

> there was a more dominant purpose behind the St. Louis test, *viz.* to determine whether potential consumers would buy

the product and how much they would pay for it—*commercial exploitation. Id.* at 1135 (emphasis supplied).

As I have found, Mr. Smith was aware of the distinction between marketing and experimental use, was conscious of the "public use" statutory bar, and knew that the St. Louis test could possibly be characterized as a "public use." *See* Facts B(3)– B(5). The evidence also establishes that Mr. Smith intentionally withheld this information from Mr. Falber, counsel prosecuting the '449 Patent. *See* Fact B(6). By doing so, he intended to shield the information about the St. Louis test from the PTO. *See* Facts B(9), B(10). At the very least, this decision resulted in a breach of Mr. Smith's duty of candor. *See* Fact B(8).

Since the evidence shows that Mr. Smith believed that the St. Louis test could properly be viewed as an experimental use, *see* Fact B(4), I have not found Mr. Smith's behavior to be "fraudulent." Mr. Smith's conduct, however, was clearly "inequitable." In light of the high level of materiality of the nondisclosed information, the only reasonable inference that can be drawn from Mr. Smith's intentional non-disclosure is that he acted with the intent to deceive the PTO. *See American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d at 1363. Accordingly, the award of reasonable attorney fees is most appropriate.

### B. Vexatious Litigation

Sterling also argues that it is entitled to attorney fees based on Airwick's bad faith in initiating, prosecuting, and maintaining this lawsuit. As the Fifth Circuit has succinctly stated,

> fee award[s] under § 285 ... are proper *only* when the plaintiff ... brings an infringement suit with *no* good faith belief that his patent is valid and infringed ... The purpose of § 285 is to prevent gross injustice, and an award under that statute requires an unambiguous showing of extraordinary misconduct.

*Arbrook, Inc. v. American Hospital Supply Corp.,* 645 F.2d 273, 279 (5th Cir.1981) (citations omitted) (emphasis supplied). Based on the presumptive validity of

the '449 Patent, the admission of Sterling that it had copied Airwick's marketed product, and my findings of fact contained in Facts C(1)–C(3), I conclude that Airwick brought this litigation in good faith. An award of attorney fees, based on the allegation of vexatious litigation, is, therefore, not justified.

## II. *"Walker Process" Counterclaim*

In the Fifth Counterclaim, Sterling seeks treble damages, under § 4 of the Clayton Act, 15 U.S.C. § 15, based on Airwick's alleged fraudulent procurement of the '449 Patent, and violation of the Sherman Anti-Trust Act, 15 U.S.C. § 2. Under the Clayton Act,

> [a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15. In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 176–77, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965), the Supreme Court held that the remedies under the Clayton Act are available "for the fraudulent procurement of the patent coupled with violations of § 2 [of the Sherman Act]."

■ While this court has determined that certain conduct by Mr. Smith was inequitable, no conduct has been found to be fraudulent. *See* Fact D(1). Nor does Sterling show, by a preponderance of the evidence, that the '449 Patent was fraudulently procured. *See* Fact D(2). Thus, this court cannot award treble damages based on the anti-trust laws. *See id.* As Justice Harlan stated, in his concurrence in *Walker Process Equipment Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. at 179, 86 S.Ct. at 351: "a private cause of action would *not* be made out if the [complainant] ... showed no more than invalidity of the patent arising, for example, from

a judicial finding of 'obviousness,' or from other factors sometimes compendiously referred to as a 'technical fraud ...'" (Emphasis supplied).

## III. *False Patent Marking*

Sterling contends that Airwick violated 35 U.S.C. § 292 by its "use of containers of ... [the] rug and room deodorizer products with legends suggesting that these products were patented, and ... use of the expression patented' in connection with its media advertising following the January 30, 1984 disclaiming of the patent." Pre-Trial Brief of Defendant Sterling Drug, Inc., p. 59.

Section 292 provides, in pertinent part, that:

> [w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; ...
>
> Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292.

■ A prerequisite to finding a section 292 violation is a showing that the alleged wrongdoer acted with the intent to deceive the public. *See Arcadia Machine & Tool Inc. v. Sturm, Ruger & Co., Inc.*, 786 F.2d 1124, 1125 (Fed.Cir.1986). Since the evidence does not establish that Airwick acted with the requisite intent, *see* Fact E(7), section 292 has not been violated. *See Brose v. Sears, Roebuck and Co.*, 455 F.2d 763, 765 (5th Cir.1972) (where the court held that section 292 must be strictly construed).

## IV. *False Advertising Violation*

■ In Sterling's Third Counterclaim, it contends that Airwick's advertising violated § 43 of the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a). Under this provision of the Lanham Trade–Mark Act,

> [a]ny person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods ... any false de-

scription or representation, including words or other symbols, tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). In order to prevail under this provision, the complainant must show that it has sustained actual injury by the alleged wrongdoer's conduct. *See Parkway Baking Co. v. Freihofer Baking Company*, 255 F.2d 641, 648 (3d Cir.1958). Sterling was offered an opportunity to establish that it was, in fact, injured by Airwick's actions. Sterling has not made such a showing. *See* Fact F(2). Thus, Sterling has not proven its false advertising claim.

### V. *Trade Secrets and Unjust Enrichment*

■ In its First Counterclaim, Sterling asserts that Mr. Smith misappropriated trade secrets, and was, thereby, unjustly enriched. As the Third Circuit has stated:

[under] [t]he law of both Pennsylvania and New Jersey, [the complainant must establish] five basic elements of the [trade secret misappropriation] claim:

(1) the existence of a trade secret,

(2) communicated in confidence by the plaintiff to the employee,

(3) disclosed by the employees in breach of that confidence,

(4) acquired by the competitor with knowledge of the breach of confidence, and

(5) used by the competitor to the detriment of plaintiff.

*Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429–30 (3d Cir.1982) (citations omitted). Here, Sterling fails to show, by a preponderance of evidence, that it possessed any trade secrets which were misappropriated by Mr. Smith/Airwick. *See* Facts G(1)–G(5). Sterling's unjust enrichment claim, based on the arguments that Mr. Smith/Airwick misappropriated its trade secret in DISPAL, or a trade secret in its concept or idea, fails as it is not supported by a preponderance of the evidence.

### CONCLUSIONS OF LAW

1. The court has jurisdiction over this action based on 28 U.S.C. §§ 1331, 1337, 1338, 2201, and 2202; the United States Patent Laws, 35 U.S.C. § 1 *et seq.;* 15 U.S.C. § 1125(a); and sections 15 and 26 of Title 15 of the United States Code.

2. In failing to disclose the St. Louis testing information, Airwick, through Mr. Smith, breached its duty of candor, and its inequitable conduct has been established. In this exceptional case, Sterling is entitled to reasonable attorney fees on this issue.

3. Airwick's conduct was not fraudulent or inequitable in regard to the other issues raised by Sterling.

4. The institution and maintenance of this lawsuit by Airwick, for Sterling's infringement of the '449 Patent, was in good faith.

5. Airwick is not entitled to recover on its First Counterclaim.

6. Airwick is not entitled to recover on its Third Counterclaim.

7. Airwick is not entitled to recover on its Fourth Counterclaim.

8. Airwick is not entitled to recover on its Fifth Counterclaim.

An appropriate order follows.

### ON PETITION FOR ATTORNEY FEES

AND NOW, this 14th day of July, 1989, upon consideration of Sterling's Petition For Attorney Fees, Airwick's Opposition thereto, Sterling's Reply, and the oral arguments advanced in today's hearing, Sterling's Petition is ruled upon as follows:

1. I will allow the fees and disbursements incurred in defending the patent. While Airwick questions the propriety of allowing fees and costs for issues unrelated to the "public use" question, I find that the patent issues were interrelated. Consideration of all the issues was necessary in order to assess Airwick's conduct and the exceptional nature of this suit. Thus, Sterling will be compensated in full

for all fees incurred, and disbursements made, from the commencement of this action until the date of the patent's dedication/disclaimer, January 30, 1984.

2. I find that Sterling is entitled to 25% of the fees incurred, and the disbursements made, after the patent was dedicated, since Sterling was, during that time, pursuing four legal causes of action: 1) the § 285 claim, 2) the false advertising claim (Counterclaim # 3); 3) the false marking claim (Counterclaim # 4); and 4) its Walker Process claim (Counterclaim # 5). Since Sterling has not included costs related to its trade secret counterclaim, only these four issues are required to be prorated. While it is possible that the majority of Sterling's time, during these years, was dedicated to the § 285 claim, Sterling has not offered sufficient proof, i.e. documented contemporaneous allocated time records, to substantiate this conclusion. Thus, for this time period, I will only permit one-fourth of the requested fees and disbursements.

3. Other counsel's fees and disbursements will be allowed in the manner described above since this court cannot, with precision, ascertain the amount of time other counsel dedicated to each of the claims.

4. The costs of securing Dr. Cahn's expert testimony will be permitted in full because it related solely to the patent questions and was helpful to this court in understanding the issues.

Mr. Mondace's testimony, on the other hand, while informative, merely explained the law, a task for which Sterling's counsel will be compensated. Thus, it is duplicative and shall not be allowed.

5. While I will allow the fees incurred by Sterling in preparing its Petition For Reasonable Attorneys Fees, I will not award the costs of preparing the Reply: the Reply only serves to clarify and correct the original Petition.

6. In weighing all the factors involved in this action, this court has decided not to allow pre-judgment interest.

7. Post-judgment interest at 9.1%, however, is allowable and shall be calculated from May 9, 1989, the date of judgment as to Airwick's liability.

Finally, I find that the hourly rate, claimed for counsel, law clerks, and paralegals to be reasonable.

Accordingly, IT IS ORDERED that Sterling is AWARDED fees, costs, and interest as follows:

I. PRE–DEDICATION:
   A. Morgan & Finnegan attorney fees paid by Sterling . . . . . . . . . . $483,184.00
   B. Morgan & Finnegan disbursements . . . . . . . . . . . . . . . . . . . . . . . . . . 23,043.42
   C. Crummy, Del Deo, Dolan, Griffinger & Vecchione attorney fees . . . . . 3,621.03
   D. Crummy, Del Deo, Dolan, Griffinger & Vecchione disbursements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 530.16
   E. In-house counsel's fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,480.00
   SUBTOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $518,858.61
II. POST–DEDICATION:
   A. Morgan & Finnegan attorney fees paid by Sterling . . . . . . . . . . $216,211.56
   B. Morgan & Finnegan disbursements . . . . . . . . . . . . . . . . . . . . . . . . . . 29,403.77
   C. Crummy, Del Deo, Dolan, Griffinger & Vecchione attorney fees . . . . . 2,491.10
   D. Crummy, Del Deo, Dolan, Griffinger & Vecchione disbursements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102.96
   E. In-house counsel's fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,180.00
   SUBTOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 251,389.39
III. EXPERT WITNESS FEE:
   A. Dr. Cahn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 49,260.36
IV. STERLING'S PETITION FOR ATTORNEYS FEES:
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 17,475.00

AWARD (before post-judgment interest) . . . . . . . . . . . . . . . . . . . . . . . $ 836,983.36
POST–JUDGMENT INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,640.00
TOTAL AWARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 850,623.36

## JUDGMENT

AND NOW, this 14th day of July, 1989, JUDGMENT, on the Complaint, is ENTERED in favor of Sterling Drug, Inc. ("Sterling"), and AGAINST Airwick Industries, Inc. ("Airwick"), for reasonable attorney fees and costs in the amount of $850,-623.36.

All other claims in the Complaint are DISMISSED as moot.

The Second Counterclaim is DISMISSED as moot.

JUDGMENT is ENTERED in favor of Airwick, and against Sterling, on all other counterclaims.

Finally, JUDGMENT is ENTERED in favor of James A. Smith, and against Sterling, on the Fifth Counterclaim.