**NATIONAL BUSINESS SYSTEMS, INC., et al., Plaintiffs-Appellants,**

v.

**AM INTERNATIONAL, INC., et al., Defendants-Appellees.**

No. 82–2393.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1984.

Decided Sept. 20, 1984.

Rehearing and Rehearing En Banc Denied Jan. 24, 1985.

Edward S. Irons, Washington, D.C., for plaintiffs-appellants.

Raymond P. Niro, Memel, Jacobs, Pierno & Gersh, Washington, D.C., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.[*]

JAMESON, Senior District Judge.

National Business Systems, Inc. (NBS) appeals from those portions of the judgment of the district court (1) holding claim 7 of AM International Inc.'s (A.M.) patent No. 3,272,120 valid and infringed; (2) denying NBS costs and attorneys' fees; and (3) granting an injunction against further infringement of claim 7 by NBS.[1] We affirm and remand for a determination of damages.

## I. Factual Background

This appeal concerns a single patent, No. 3,272,120, ('120) entitled "Address Printing Machines with Roller Platens," issued to AM (as assignee of the inventor, D.W. Johnson) on September 13, 1966 from an application filed October 22, 1964.[2] The patent was described by the district court as follows:

> The '120 patent discloses and claims a data recorder using a two platen roller, two stroke (forward-return) method for imprinting forms from embossed printing plates or cards, such as are used in credit transactions in department stores and gas stations and in finance institutions with bank cards. The data recorder disclosed in the '120 patent has a dual platen roller arranged on a double eccentric shaft constituting a platen assembly which allows for selective imprinting of characters from the embossed plates or cards. A first platen roller is lowered and imprints on the form the first portion of characters as it rolls along the embossed plate or card, which is on the bed of the data recorder, in a left-to-right stroke of the platen carriage, which houses the platen assembly and is operated by hand. The first platen roller is then raised and a second platen roller is lowered to imprint the remaining portion of the characters as it rolls along the embossed plate or card in a right-to-left return stroke.

The AM machine was designed to meet a particular demand for an imprinter that could produce imprints on carbon form sets sufficiently clear to be read accurately by machine. The demand in part grew out of the American Bankers' Association's decision to adopt "magnetic ink character rec-

---

[*] Hon. William J. Jameson of the District of Montana, sitting by designation.

1. Exclusive jurisdiction over patent appeals is now vested in the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(1) (as amended April 2, 1982). The Federal Courts Improvement Act that amended section 1295, however, provided: "any case in which notice of appeal has been filed in a district court of the United States prior to the effective date of this Act [October 1, 1982] shall be decided by the court of appeals to which appeal was taken." Federal Courts Improvement Act, Pub.L. No. 97–164, § 403(e), 96 Stat.

37, 58 (1982). The notice of appeal in this case was filed before October 1, 1982, and therefore this court properly acquired jurisdiction.

2. The validity of three other patents held by AM—No. 3,138,091 ('091) 3,340,800 ('800) and 3,763,777 ('777), was also determined by the district court. The court held claim 12 of the '800 patent and claims 1–3 of the '777 patent invalid and claims 1 to 6 of the '120 patent, claims 1–11 of the '800 patent, and claims 4 and 5 of the '777 patent not infringed. In a prior order the court held the '091 patent not infringed and dismissed the counterclaim based upon it.

ognition symbols" (MICR symbols) for imprinting deposit slips, receipts, and other forms. As stated in the patent application "[a]lthough the use of MICR characters has greatly increased the speed and efficiency with which the imprinted forms can be sorted, a considerable amount of difficulty has been encountered in the imprinting of the MICR characters on the forms." After listing recent improvements in the design of imprinters and form sets, the patent described the principal object of the AM machine: "it is the object of the present invention to further advance current practices of imaging form sets with characters having a high degree of clarity and outline accuracy through the use of small data recorders."

The '120 patent listed seven claims, the last of which was held to have been infringed. Claim 7 is described in the patent:

7. A method of making an impression on a form set from an embossed printing device which utilizes a carriage movable in opposite directions between a first and second position and having a pair of roller platens rotatably supported thereon, rolling one of the platens in printing relation to one portion of the printing device with the other platen in non-printing relation to another portion of the printing device when the carriage is moved in one direction, and rolling the other platen in printing relation to the other portion of the printing device with said one platen in non-printing relation to said one portion when the carriage is moved in the opposite direction.

Accompanying and illustrating the claims in the patent were drawings showing "a preferred embodiment of the present invention" as a "small data recorder" with its carriage and platform holding a merchant plate and customer card.

## II. *Proceedings Below*

On April 27, 1978 AM initiated the proceedings leading to this litigation when it applied for reissue of the '120 patent pursuant to 35 U.S.C. § 251. The purpose of the reissue proceeding is to correct inadvertent errors in the original patent which may make it "wholly or partly inoperative or invalid." *Id.* AM sought to amend its patent by adding additional references to "prior art." Prior art references are important because the statutory presumption of the patent's validity, 35 U.S.C. § 282, "is 'largely, if not wholly, dissipated' when pertinent prior art is not considered by the Patent Office." *Medical Laboratory Automation v. Labcon, Inc.,* 670 F.2d 671, 674 (7th Cir.1981) (quoting *Chicago Rawhide Mfg. Co. v. Crane Packing Co.,* 523 F.2d 452, 458 (7th Cir.1975), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976)). Failure of the examiner to consider pertinent prior art, then, leaves the patent open to attack on numerous grounds such as "obviousness" (35 U.S.C. § 103), anticipation (35 U.S.C. § 102(a)), and fraud on the Patent Office (37 C.F.R. § 1.56).

On November 17, 1980, NBS filed a petition and protest in the reissue proceeding, asking the Patent Office to withdraw AM's application and to strike it from the Patent Office files for violation of the duty of disclosure required under 37 C.F.R. § 1.56. The patent examiner's initial opinion on February 12, 1981 noted that a prior art patent No. 3,340,800 ('800), also assigned to AM, "would clearly have been material and would have been a most pertinent reference." The examiner then considered the merits of the reissue application and rejected all claims of the '120 patent. The examiner specifically rejected Claim 7 on two grounds: (1) "under 35 U.S.C. § 102(a) as fully anticipated by Cox [patent No. 539,-356]"; and (2) "as being 'on sale' [under § 102(b) ] more than a year before the [October 22, 1964] filing date" of the original '120 patent application. AM appealed to the Patent Office Board of Appeals. At AM's request the appeal was suspended pending the outcome of this litigation.

While the reissue proceedings were still pending, appellant NBS filed two complaints in federal district court. In pertinent part NBS sought a declaratory judgment "for the purpose of resolving an actu-

al controversy between the parties with respect to the validity, enforceability and infringement by plaintiffs of each of AM's United States Patents 3,138,091; 3,272,120; 3,340,800; 3,763,777." NBS also sought treble damages and attorneys' fees under 35 U.S.C. §§ 284 and 285 respectively. AM counterclaimed against NBS, alleging the validity and infringement of each of its four patents and similarly requesting treble damages and attorneys' fees. The trial lasted eleven days, from April 13 to April 28, 1982.

On August 26, 1982, the district court issued a 49-page memorandum opinion, with a careful analysis of the expert testimony, exhibits, and applicable law.[3] The court concluded, *inter alia*, that claim 7 of AM's '120 patent was "valid and infringed by plaintiffs' devices." The court enjoined NBS from further manufacture and sale of the infringing imprinters and ordered an accounting "as to the amount of damages suffered by AM by reason of NBS' infringement of Claim 7." Based on this accounting, the court ordered that "AM shall recover from Plaintiffs the amount of these damages, not less than a reasonable royalty."

Observing that "this is a close case," that "at any time the validity and infringement of the three patents was 'open to honest doubt,'" that "defendants have not proven that plaintiffs acted in a bad faith belief that the patents were invalid," and that "defendants have not carried their burden of proof as to willful infringement," the court denied both parties' requests for treble damages and attorneys' fees.

Finally, in the same order, the court certified its judgment for immediate appeal pursuant to Fed.R.Civ.P. 54(b). NBS now appeals both the court's judgment of validity and infringement and its denial of attorneys' fees and costs.

## III. *Contentions on Appeal*

Appellant NBS raises numerous issues on appeal which are summarized in the following five contentions:

1. The Patent Offices expertise in resolving issues and the attendant presumption of its correct exercise are controlling, and alternatively AM is "collaterally estopped to assert that claim 7 is valid, having unsuccessfully contested that issue in a fair proceeding before the [Patent Office];"

2. Claim 7 is invalid for being obvious under 35 U.S.C. § 103.

3. Claim 7 is invalid, having been "anticipated" by prior art under 35 U.S.C. § 102(a) and having been "on sale" for more than a year as prohibited by 35 U.S.C. § 102(b).

4. The court erred in concluding that claim 7 was infringed under the "doctrine of equivalents."

5. The court erred in denying NBS attorneys' fees and costs provided for under 28 U.S.C. § 1927 and 35 U.S.C. § 285.

## IV. *Effect of Patent Office Reissue Decision*

NBS contends that the Patent Office's decision rejecting claim 7 in the reissue proceeding was entitled to a "presumption of correctness" in the district court. This presumption, NBS argues, shifted the burden to AM to prove the decision was wrong. Alternatively, NBS argues that "[i]ntertwined with the presumption" is the doctrine of collateral estoppel which would prevent AM from relitigating the same issues decided by the Patent Office.

A patent is presumed valid. 35 U.S.C. § 282. This court has held unequivocally that section 282 "places the burden of persuasion on the party attacking the validity of the patent. This burden remains upon the alleged infringer throughout the [judicial] proceeding and is in no sense dependent on the character of the proceedings before the Patent Office...." *Chicago Rawhide Mfg. Co. v. Crane Packing Co.*, 523 F.2d 452, 457–58 (7th Cir.1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976).

**3.** See *National Business Systems, Inc. v. Am.* *Intern. Inc.*, 546 F.Supp. 340 (N.D.Ill.1982).

In *Johnson & Johnson v. Wallace A. Erickson & Co.*, 627 F.2d 57 (7th Cir.1980), we considered whether a district court could compel a reissue proceeding as a condition precedent to adjudication in the court. In holding that the district court lacked the power to compel a prior resort to the Patent Office, we first noted that "the only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the Courts of the United States, and not in the department which issued the patent," quoting from *McCormick Harvesting Co. v. Aultman*, 169 U.S. 606, 609, 18 S.Ct. 443, 444, 42 L.Ed. 875 (1898) *Id.* at 59. We concluded that a prior reissue proceeding would have *no* effect on subsequent litigation over the validity of a patent:

> The doctrine of primary jurisdiction does not apply. The validity of patents is "within the conventional experience of judges...." The question of the validity of any particular patent is a private issue between the patentee and alleged infringers, and not a public issue of industry-wide or regulatory concern. Finally, the factual adjudications of the Patent Office, unlike most administrative factual adjudications, ... are not conclusive if supported by substantial evidence on the record considered as a whole. The ultimate question of patent validity is one of law and not subject to the clearly erroneous standard of review.... *Thus, the compelled reissue proceedings would have no effect whatever on the judicial process.*

627 F.2d at 61–62 (citations omitted, emphasis added); see also *Application of Hitchings*, 342 F.2d 80, 82, 52 CCPA 1141 (1965) (even within the Patent Office "principle of res judicata should not apply where the initial decision is no more than an unappealed final rejection of an examiner."); cf. *Mooney v. Brunswick Corp.*, 663 F.2d 724, 731 (7th Cir.1981) (irregularities in reissue proceeding diminished presumption of validity).

In the subsequent case of *Singer Co. v. P.R. Mallory & Co., Inc.*, 671 F.2d 232 (7th Cir.1982), reversing an order of the district court enjoining a patentee from proceeding with its patent reissue application, we recognized that the statutory procedure under 35 U.S.C. § 251 would "permit a review of prior art by an agency with particular expertise in the area, and ... provide a guide to the patentee as to the advisability of continuing expensive infringement litigation." *Id.* at 236. On the other hand, we also noted that a reissue of the patent would not affect the substantive rights in the litigation of the party attacking the validity of the patent. "The district court will still rule on ... [the] prior art claims, thus providing a remedy at law for any 'incorrect' findings by the Patent Office." *Id.* at 235.

 The courts generally defer to the technical expertise possessed by the Patent Office in originally issuing a patent. This expertise and corresponding judicial deference are the practical underpinnings of the statutory presumption of validity surrounding patents. See *Chicago Rawhide Mfg. Co.*, 523 F.2d at 458; *Parker v. Motorola, Inc.*, 524 F.2d 518, 521 (5th Cir.1975). But less deference is appropriate for a patent office finding of invalidity in a reissue proceeding because, as we pointed out in *Johnson & Johnson*, patent validity is a question of law reserved exclusively to the federal courts in de novo proceedings. Here, special deference to the Patent Office decision is particularly inappropriate because the patent had been in existence for over 11 years and because the district court, having the benefit of extensive proof by expert testimony and demonstrative evidence, issued a detailed, well-reasoned opinion. The decision of the Patent Office in the reissue proceeding is neither cloaked in a "presumption of correctness" independent of the patent nor entitled to special deference in a separate federal court adjudication of patent validity.

## V. *Validity of Claim 7*

It is well established that "the ultimate question of patent validity is one of law...." *Graham v. John Deere Co.*, 383

U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); *Medical Laboratory Automation v. Labcon, Inc.*, 670 F.2d at 672. The Supreme Court has made it equally clear, however, that the three conditions of patent validity—novelty, utility (defined in 35 U.S.C. §§ 101 and 102), and "nonobviousness" (35 U.S.C. § 103)—are legal issues which lend themselves to critical factual inquiries. See *Graham*, 383 U.S. at 17, 86 S.Ct. at 693.

In *Republic Industries Inc. v. Schlage Lock Co.*, 592 F.2d 963, 972–73 (7th Cir. 1979), and *Dual Mfg. & Engineering, Inc. v. Burris Industries Inc.*, 619 F.2d 660, 665 (7th Cir. en banc), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980), we summarized the extent of the presumption of validity of a patent, noting that the presumption is not conclusive, but merely places the burden of proof on the party attacking the validity of the patent. We noted further that the presumption does not exist against evidence of prior art not before the Patent Office, and that even one prior art reference not considered by the Patent Office can suffice to overthrow the presumption.

■ Even though the presumption of validity is weakened by the failure of the Patent Office to consider all pertinent art before issuing the patent, the "degree by which it is weakened depends on a balancing of the pertinence of the newly cited art with the pertinence of the art considered by the Patent Office." *Tee-Pak, Inc. v. St. Regis Paper Company*, 491 F.2d 1193, 1196 (6th Cir.1974).

We now consider the various alleged claims of invalidity in light of these principles.

A. *Obviousness*

NBS contends that claim 7 of the '120 patent was "obvious" in light of prior art patents '800 and '725. The obviousness bar appears in 35 U.S.C. § 103:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

The Supreme Court has set out standards for applying section 103 in *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 694:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

This court has consistently followed these guidelines. See, *e.g.*, *Dickey-John Corp. v. International Tapetronics Corp.*, 710 F.2d 329 (7th Cir.1983); *Novo Industri A/S v. Travenol Laboratories, Inc.*, 677 F.2d 1202, 1206 (7th Cir.1982); *Dual Mfg. & Engineering v. Burris Industries*, 619 F.2d 660, 666 (7th Cir.1980).

The district court similarly followed the *Graham* guidelines. First, the court determined the scope and content of the prior art patents:

The patents referred to by [NBS's expert] Van DerLinden include Nos. 1,280,-192; 1,941,667; 2,775,936; 3,018,725; 3,113,615; 3,340,800. All but one of these patents discloses either a single platen roller operating in a single stroke method, tandum [sic] platen rollers operating in a single stroke method, or two platen rollers operating in a single stroke, idling return method. The '800 patent discloses a two platen roller, multiple stroke imprinter.

Second, the court noted the differences between the prior art and the claims at issue:

While certain elements of Claim 7 of the '120 patent were disclosed in the prior art, the prior art combines none of these elements to produce the result which makes the '120 patent distinctive:

selective imprinting by two platen rollers on opposite strokes.

546 F.Supp. at 352.

Finally, although the district court made no specific finding of the contemporaneous level of skill in the pertinent art, it is clear from the several references to that guideline in the court's opinion that it resolved the level of ordinary skill in the art based on the expert testimony and the prior art itself. Moreover, at least one expert testified that "[m]y designers would have had a very bad time" simply combining the prior art to produce the disputed invention. We are satisfied, therefore, that the district court followed the approved procedure in its analysis of the obviousness issue.

The obviousness issue presents a very close question in this case. Despite its conclusion that "Claim 7 of the '120 patent would not have been obvious to one reasonably skilled in the art at the time the invention was made," the district court observed that the '800 patent is the "closest" prior art. It discloses a two roller machine for selectively imprinting in four strokes: the first roller on the first stroke; an idling return stroke; then the second roller on the third stroke; and an idling return fourth stroke. It is distinguished from the '120 patent principally because it does not imprint in both directions, requiring only two strokes. In light of the '800 patent, it would seem a logical improvement, if not an obvious one, to have designed a machine to imprint on opposite strokes.[4]

 We are persuaded, however, that the district court reached the right conclusion for two reasons. First, we are aware that a finding of obviousness might be the product of impermissible hindsight, reached without a precise appreciation of the contemporaneous level of skill in the art. See *Walt Disney Productions v. Fred A. Niles Communications Center, Inc.,* 369 F.2d 230, 234 (7th Cir.1966). Second, as Justice Stevens concluded in a similar case while a member of this court:

> [A]s we read the transcript of the testimony in this case, we are impressed with the importance of having live witnesses, subject to cross-examination, explain the operation of physical exhibits in a way which enables a district judge to understand what is before him and to interrupt with proper questions when he does not understand.... The trial judge really is in a better position to evaluate the obviousness issue than we are.... In this court it is appellant's burden to persuade us that an intelligent district judge, who has demonstrated a thorough understanding of the relevant art, committed an error requiring reversal.

*Chicago Rawhide Mfg. Co. v. Crane Packing Co.,* 523 F.2d at 460. In this case the district court's opportunity to base its conclusions on live testimony is critically important. In its discussion of the obviousness issue, the district court made several important credibility assessments, specifically crediting the testimony of AM's expert and rejecting that of NBS's expert.[5]

---

**4.** The NBS expert testified that it would have been "very, very obvious" to combine the prior art to produce the device disclosed in the '120 patent. As we noted in *Dual Mfg. & Engineering v. Burris Industries,* 619 F.2d at 666 n. 4, however, "we cannot treat the witness as testifying as an expert witness on a disputed factual matter for he was giving an opinion on the ultimate legal question for decision, that of obviousness."

**5.** The testimony on which the district court relied consists of the following exchange during the rebuttal testimony of John A. Maul, AM's sole expert witness, who for 22 years had worked as AM's engineer designing and developing imprinters:

> Q. Now, during NBS' defensive case, Mr. VanDerLinden expressed his opinion that the subject matter of Claim 7 of the Johnson patent was obvious based on the '192 Duncan Patent, the '667 Eley Patent, the '863 Hueber Patent, the '936 Curtis Patent, the '725 Maul Patent, the '516 Johnson Patent, and the '800 Gruver Patent. Do you agree with his position or opinion?
> A. No, I do not.
> Q. What is your opinion?
> A. I find that there is no teaching how to put all of these elements together and come up with the Johnson.
> Q. You mean the Johnson method as set forth in Claim 7?
> A. Yes.
> Q. Are these patents considered collectively deficient in any respect relative to Claim 7 of Johnson?

Because we are unable to make these credibility assessments, we agree that "[t]he trial judge really is in a better position to evaluate the obviousness issue than we are," notwithstanding that the issue is a legal question freely reviewable by this court. Here, the district court credited "defendants' expert testimony" and rejected "plaintiffs' expert testimony. Based on the prior art and the expert testimony," the court found "Claim 7 of the '120 patent would not have been obvious to one reasonably skilled in the art at the time the invention was made." 546 F.Supp. at 352–53. There is substantial evidence to support the court's findings of fact, and NBS has not convinced us that the trial judge made an error of law in holding claim 7 "nonobvious".

B. *Anticipation*

As the district court observed, "[a]nticipation is a strictly technical defense." *Id.* at 350 (citing *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180, 1182–83 (7th Cir.), *cert. denied,* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971)). The defense of anticipation derives from the requirements for novelty found in 35 U.S.C. § 102(a):

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent....

In *Saunders v. Air-Flo Co.,* 646 F.2d 1201, 1203 (7th Cir.1981), this court described the strict standards for anticipation under section 102(a):

"A previous patent ... anticipates a purported invention only where, except for insubstantial differences, it contains all of the same elements operating in the same fashion to perform an identical function."

(quoting *Popeil Bros., Inc. v. Schick Electric, Inc.,* 494 F.2d 162, 164 (7th Cir.1974)).

NBS contends, and the Patent Office concluded, that the Cox Patent No. 539,356 "fully anticipated" claim 7 of the '120 patent. The district court found that the Cox patent "discloses a printing press and not a table-top imprinter as embodied in Claim 7.... Although the Cox Patent 539,356 discloses two rollers capable of printing in opposite directions," the court concluded, "... identification of the device embodied in the Cox patent as a printing press supports this court's conclusion that there is no identity of function between the two patents, and therefore no anticipation." 546 F.Supp. at 350. NBS principally contends that the differing embodiment of the Cox invention is "inconsequential" and furthermore is encompassed by Claim 7 which "does not exclude the practice of its 'method' with a 'printing press' nor limit such practice to a 'table-top imprinter'."

■ We think appellant erroneously minimizes the distinction drawn by the district court between the Cox printing press and the table-top imprinter. It is clear from the testimony of both parties' experts that the Cox device was intended for *printing* an ink impression on a single sheet of paper rather than *imprinting* from embossed plates to a carbon form set. The same testimony discloses that the rotation of the rollers on the Cox device differed from those in the imprinter and that the "bed" of the printing press moved during the printing process in contrast to the stationary bed of the imprinter.[6] The district

---

A. These patents considered collectively have no common basis where one of the roller platens prints on the left right stroke and the other prints on the right to left stroke.

**6.** Roy VanDerLinder, appellant's expert, was cross-examined concerning the Cox patent as follows:

Q. Is there any such formset disclosed in the Cox patent?

A. I believe it is a piece of paper in the Cox patent?

Q. It is not a formset, is that right, sir?

A. That's correct.

Q. Then is it also correct that the Cox patent does not disclose the method set forth in Claim 7 of the Johnson patent and does not disclose the method which I have just recited in my previous question?

A. Yes.

court cited this testimony in its opinion and plainly relied on the foregoing differences between the two patents when it distinguished the Cox device as a "printing press." Considering this distinction, we can not conclude that the Cox patent "contains all of the same elements operating in the same fashion to perform an identical function" to the '120 patent. See *Saunders v. Air-Flo Co.*, 646 F.2d at 1203. The district court correctly held that "there is no identity of function between the two patents, and therefore no anticipation."

### D. *"On Sale" Bar*

NBS argues that claim 7 of the '120 patent is invalid because the invention it disclosed was "on sale" more than one year before the date of the patent application. Title 35 U.S.C. § 102(b) provides in part:

A person shall be entitled to a patent unless—

(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....

We have held that " '[o]n sale' does not mean an actual accomplished sale but activity by the inventor or his company in attempting to sell the patented idea." *Amphenol Corp. v. General Time Corp.*, 397 F.2d 431, 433 (7th Cir.1968) (quoted in *Red Cross Mfg. v. Toro Sales Co.*, 525 F.2d 1135, 1139 (7th Cir.1975)). In *Red Cross* we also allocated the proper burden of proof between the parties:

....

Q. And looking at Figure 1, does it disclose a printing press?
A. Yes.
Q. In the Cox Patent is there a disclosure of a single sheet of paper as contrasted to a formset as we have just been discussing?
A. Yes.
Q. In the Cox Patent is it a fact that a single sheet of paper is printed on both sides as contrasted to imprinting one side of a formset?
A. Yes.
Q. In the Cox Patent is it true that both the rollers and the bed are moving, namely, the rollers are moving in one direction and the bed moves in an opposite direction during all printing activity?

When objection is asserted, the burden of establishing that the patented product was "on sale" before the critical date is on the objector. This burden must be satisfied by clear and convincing evidence. Once such activity has been successfully ·established, invalidity may be avoided by showing that the sales activity was "substantially for purposes of experiment." The burden of proving experimental purpose rests with the inventor and must be met with "full, unequivocal, and convincing" evidence.

525 F.2d at 1139–40 (citations omitted). Finally, the Federal Circuit recently reviewed the proper test for determining whether an activity was experimental. See *TP Laboratories v. Professional Positioners, Inc.*, 724 F.2d 965 (Fed.Cir.1984). The court quoted at length from *City of Elizabeth v. American Nicholson Pavement Co.*, 7 Otto 126, 97 U.S. 126, 24 L.Ed. 1000 (1877) where the Supreme Court stated the following general rule:

It is not public knowledge of his invention that precludes the inventor from obtaining a patent for it, but a public use or sale of it.

*Id.* at 136. The Supreme Court then set out the following general guidelines for applying the on sale provision:

When the subject of invention is a machine, it may be tested and tried in a building, either with or without closed doors. In either case, such use is not a public use, within·the meaning of the

A. Yes.
Q. Is it true that in the Cox patent that during all the printing activities each of the rollers rotates in opposite directions as indicated by the arrows within the drawings? I'm referring now to Figure—
A. Yes.
On redirect, VanDerLinden was asked whether he found "any reason to criticize" NBS's contention that the Cox patent anticipated the '120 patent. The generality of the question and his answer, "No, I do not," did little to mitigate the damage of the cross-examination or to enhance his credibility. The district court justifiably relied heavily on the cross-examination testimony.

statute, so long as the inventor is engaged, in good faith, in testing its operation. He may see cause to alter it and improve it or not.... So long as he does not voluntarily allow others to make it and use it, and so long as it is not on sale for general use, he keeps the invention under his own control, and does not lose his title to a patent.

*Id.* at 135.

■ In this case, the '120 patent application was filed on October 22, 1964. October 22, 1963, therefore, is the critical date before which the invention could not be on sale. The dispute here resolves into a single question: was there clear and convincing evidence of "activity by the inventor or his company in attempting to sell the patented idea"? While the record on appeal again presents a close question, we agree with the district court's conclusion that "plaintiffs have not satisfied their burden of proving commercial activity of any kind with the requisite intention to exploit the '120 invention." 546 F.Supp. at 354.

Four essential facts are undisputed: (1) in June of 1962 the American Association of Railroads (AAR) placed an order with AM for certain imprinters, without specifying imprinters embodying the '120 invention; (2) in August of 1963 the '120 invention was still being tested by AM engineers; (3) testing was largely completed when the product was released for factory production on September 28, 1963;[7] (4) the first actual sale of the machines to customers occurred sometime in late April or early May, 1964. There is also evidence that prior to October 22, 1963 AM had tentatively assigned at least a wholesale price to the imprinters. Absent from the record, however, is any evidence that AM disclosed to AAR the '120 invention or an imprinter embodying it. Before October 22 there is no evidence that AM even mentioned the model of imprinters it intended to ship to AAR. In sum, the evidence suggests an unusual circumstance where AM did not offer or attempt to sell its invention prior to October 22, 1963 because it already had an existing general order for imprinters. Evidence of AM's unilateral decision to fill the order with imprinters embodying the '120 invention is insufficient to establish an attempt to sell without some evidence of relevant communications with the customer. See *Red Cross Mfg. Corp. v. Toro Sales Co.*, 525 F.2d 1135, 1140–41 (7th Cir.1975) (device displayed to potential customer); *Dart Industries v. E.I. DuPont DeNemours & Co.*, 489 F.2d 1359, 1363 (7th Cir.1973), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974) (device demonstrated to numerous customers); *Amphenol Corp. v. General Time Corp.*, 397 F.2d 431, 436 (7th Cir.1968) (device was "placed 'on sale' by submitting a sample with a quoted price to the customer"). It is well established that "mere existence of a sales contract is insufficient to establish a placing 'on sale'." *Hobbs v. A.E.C.*, 451 F.2d 849, 859 (5th Cir.1971); see also *Application of Dybel*, 524 F.2d 1393, 1400 (C.C.P.A.1975) (executory contract for sale insufficient where there was no evidence that purchaser knew how invention would perform).[8]

### VI. *Infringement—Doctrine of Equivalents*

The district court found that "the NBS accused imprinters do not 'fall clearly with-

---

**7.** The district court also found that "there is no evidence conclusive on whether the designed device was reduced to practice and was capable of being produced." The testimony of AM's expert, however, establishes that the imprinter had been thoroughly tested and found operable prior to its release for factory production. This is all that is required to show reduction to practice. See *CTS Corp. v. Piher Int'l Corp.*, 593 F.2d 777, 779 (7th Cir.1979). Despite this clearly erroneous finding, the record provides sufficient ground for affirming the district court's ultimate conclusion that the invention was not on sale.

**8.** We do not hold that the purchaser must have actual knowledge of the invention for it to be on sale. See *Application of Blaisdell*, 242 F.2d 779, 783, 44 CCPA 846 (1957). We merely state the obvious requirement that to place an invention on sale a manufacturer ordinarily must have some communication with its customers regarding sale of the invention or the device that embodies it.

in the claim,' and there is no literal infringement" of the '120 patent. The court then applied the doctrine of equivalents and held that "the NBS imprinters are 'the structural equivalent of the device described in' Claim 7 of the '120 patent, and 'perform ... substantially the same function, in substantially the same way, to achieve the same results, even though ... [they] differ ... in form or shape.'" Based on this finding, the district court found that the NBS imprinters infringed the '120 patent. 546 F.Supp. at 349. NBS attacks this finding as "rooted in a misconception of law" which led the district court to erroneously confine its inquiry to the language of claim 7. We disagree with appellants' characterization of the record and find no "misconception of law" on the part of the district court.

The Supreme Court described the theory of the doctrine of equivalents in *Machine Co. v. Murphy,* 7 Otto 120, 97 U.S. 120, 125, 24 L.Ed. 935 (1878): "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." (quoted and approved in *Graver Mfg. Co. v. Linde Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)). In *Graver Mfg. Co. v. Linde Co.* the Court also made it clear that:

> A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate re-

view, should not be disturbed unless clearly erroneous.

339 U.S. at 609–10, 70 S.Ct. at 857. Finally the Court listed several factors that could influence a determination of equivalence:

> Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

*Id.* at 609, 70 S.Ct. at 857.

 The district court correctly followed the foregoing guidelines in applying the doctrine of equivalents. The court did limit its inquiry with respect to determining literal infringement, but its finding of equivalence is properly based on expert testimony regarding the interchangeability of the "printing device" disclosed in claim 7 and the two embossed plates used in the NBS imprinters. The NBS imprinters print from one plate on the first stroke and a second plate on the return stroke. NBS argues that claim 7 is limited to imprinting "from different portions of the same embossed printing device" on opposite strokes. The court, however, specifically credited the testimony of AM's expert that "at the time the '120 invention was developed, up to the present, the imprinting art has used *printing device* to mean a credit card and station plate either separately or in combination." Thus, it is clear that claim 7 encompasses the variation practiced by NBS.[9] The district court, then, correctly held that, despite minor variations, the NBS imprinters performed the same function and achieved the same results as the invention disclosed in claim 7.

**9.** The Federal Circuit has noted that "an invention representing only a modest advance over the prior art is given a more restricted (narrower range) application of the doctrine [of equivalents]." *Thomas & Betts Corp. v. Litton Systems, Inc.,* 720 F.2d 1572, 1580 (Fed.Cir.1983). Granting that the '120 invention is a "modest advance

over prior art," the question remains whether the NBS variations are "the same as, or an equivalent of, the improvement claimed by the patentee." *Id.* There was substantial evidence to support the district court's finding that the NBS imprinter was the equivalent of the '120 invention.

## VII. *Attorneys' Fees and Costs*

The district court denied the NBS request for attorneys' fees and costs attributable to the two patents found invalid. The court held that, "despite the weight of the prior art, the issues of patent validity and infringement are sufficiently debatable to counsel against an award of treble damages and attorneys' fees to plaintiffs under 15 U.S.C. § 285." 546 F.Supp. at 364. The court repeatedly stressed the "closeness" of the case, noting "that at any time the validity and infringement of the three patents was 'open to honest doubt.'" NBS attacks this conclusion and argues principally that it is entitled to attorneys' fees because AM committed fraud on the Patent Office by violating its duty under 37 C.F.R. § 1.56 to disclose material prior art.

Under 35 U.S.C. § 285 the district court "in exceptional cases may award reasonable attorney fees to the prevailing party." We have consistently held that a refusal to award costs and fees under 35 U.S.C. § 285 will not be disturbed absent an abuse of discretion. See, *e.g., Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 685 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *H.K. Porter Co. v. Black & Decker Mfg. Co.*, 518 F.2d 1177, 1178–79 (7th Cir. 1975). Further, we have restricted awards under section 285 to "exceptional patent cases to prevent gross injustice where fraud and wrongdoing are clearly proved." *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d at 685. Finally, we note the well-established rule that "[f]raud must be proved by clear and convincing evidence, and the party asserting it carries a heavy burden." *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed.Cir.1983). To support a finding of fraud, the court "must determine not only that the undisclosed art or information was material, but that the one charged with nondisclosure knew or should have known of its materiality at the time." *Id.* at 1153.

In its opinion the district court considered in detail each assertion of fraud and found that NBS had failed to satisfy its heavy burden of proving deliberate misrepresentations by "clear, unequivocal and convincing evidence." 546 F.Supp. at 354–55 (citing *United States v. American Bell Tel. Co.*, 167 U.S. 224, 251, 17 S.Ct. 809, 814, 42 L.Ed. 144 (1897); *Scott Paper Co. v. Fort Howard Paper Co.*, 432 F.2d 1198, 1204 (7th Cir.1970), *cert. denied*, 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971)). NBS fails to cite any part of the record to contradict this conclusion; particularly absent is evidence that AM knew or should have known of the materiality of the omitted prior art at the time of application. Under similar circumstances we have emphasized that "the district court was in the best possible position to assess attorneys' fees ... if it deemed it suitable to do so." *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d at 685. Because NBS has not convinced us that the district court abused its discretion by refusing to award fees, we will not disturb its decision.

## VIII. *Conclusion*

We conclude that the district court was not bound by the findings of the Patent Office in the reissue proceeding with respect to patent validity and that the court correctly found the facts and properly applied the law in holding that claim 7 of the patent '120 is valid. It is neither obvious under 35 U.S.C. § 103, nor anticipated under section 102(a), nor was it on sale under section 102(b) for more than a year before the original application. We conclude further that the district court properly applied the doctrine of equivalents in finding that claim 7 was infringed by the NBS imprinter. The judgment of the district court is, therefore, affirmed and remanded for a determination of damages pursuant to the district court's order of September, 1982.[10]

AFFIRMED and REMANDED.

---

**10.** In its reply brief NBS argues cursorily that the district court erred in issuing an injunction against further infringement. It now appears this issue is moot in the absence of further proceedings in the Patent Office. The patent was issued on September 13, 1966 for a 17 year

term pursuant to 35 U.S.C. § 154. The district court issued the injunction on September 13, 1982 but simultaneously stayed it pending this appeal. In the meantime, the patent expired on September 13, 1983 and "the right to make, the right to sell, and the right to use" the patented invention became "public property." *Brulotte v. Thys Co.*, 379 U.S. 29, 31, 85 S.Ct. 176, 178, 13 L.Ed.2d 99 (1964).